IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No.: 24-cv-2679-PAB-SBP**

THE ESTATE OF AVERY JAMES BORKOVEC,
by and through its co-personal representatives Dylan Bolt and Chris Borkovec

    Plaintiff,

v.

TURN KEY HEALTH CLINICS, LLC; et al.,

    Defendants.

---

**RESPONSE TO DEFENDANT SAMUELS' MOTION TO DISMISS [DOC. #64]**

---

    Avery Borkovec ("Borkovec") was just 22 years-old when he died a harrowing, painful, and avoidable death from endocarditis and sepsis on the floor of the Boulder County Jail. For close to a month, Boulder County Jail medical staff openly disregarded his obvious symptoms of a burgeoning medical emergency, including: severe diffuse body pain and soreness, severe back pain and tightness, ongoing inability to sleep, persistent vomiting, extreme tooth pain, migraines, anxiety, significant weight loss, fatigue, weakness, pallor, jaundice, inability to eat, coughing and vomiting blood, extremely elevated heart rate, shortness of breath, and critically low blood oxygenation. Despite knowing of these obviously emergent symptoms, despite inmates easily recognizing that Borkovec was gravely ill and routinely advocating for him to be hospitalized, Individual Defendants, including Defendant Nurse Practitioner Jennifer Samuels ("Samuels"), repeatedly recklessly decided to deny him emergency treatment. Borkovec's staph bacteremia was a treatable condition that would not have progressed to endocarditis and sepsis, or caused his death

if it had not been allowed to ravage his body for close to a month in front of medical staff.

Plaintiff plausibly alleged NP Samuels provided the functional equivalent of a complete denial of care in a known medical crisis and abdicated her gatekeeper role, despite knowing her young patient needed to be immediately hospitalized. Such deliberate indifference has been clearly established to be unconstitutional for years. In seeking dismissal, Samuels cherry picks allegations from the Complaint, asking the Court to ignore plausible allegations and reasonable inferences about her state of mind and to not construe the allegations in Plaintiff's favor. Defendant Samuels is simply not entitled to the inferences she seeks – specifically that she exercised reasonable medical judgment when she treated severe symptoms and abnormal vital signs with nothing more than an over-the-counter decongestant, Tylenol, and cough syrup. Samuels cannot evade liability merely by contesting the allegations and pointing to her provision of some modicum of care. If that were the standard, "every institutional doctor or gatekeeping official could shield themselves from constitutional liability by simply prescribing any mild over-the-counter pain reliever, regardless of symptoms. Such a literal inquiry into whether there was a complete denial of care is not the standard." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1139 (10th Cir. 2023). While discovery will undoubtedly lend additional facts to support Plaintiff's claims, these allegations of deliberate indifference are more than enough to survive dismissal at this early stage.

### I.     STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires

that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *Re/Max, LLC v. Motto Franchising, LLC*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (*citing Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (*quoting Twombly*, 550 U.S. at 555). However, a plaintiff still must provide "supporting factual averments" with its allegations. *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."). Otherwise, the court need not accept conclusory allegations. *Moffett v. Halliburton Energy Servs.*, 291 F.3d 1227, 1232 (10th Cir. 2002). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286. Critically here, raising a qualified immunity defense in a motion to dismiss "subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Partridge v. Pelle*, No. 17-cv-02941-CMA-STV, 2019 U.S. Dist. LEXIS 34931, at *22 n.6 (D. Colo. Mar. 5, 2019) *citing Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004).[1]

---

[1] Notably, *Twombly* did not alter "the bedrock principle that a judge ruling on a motion to dismiss must accept allegations as true," nor did it require a showing that the facts are "likely to be true" simply because a defendant asserts qualified immunity. *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008). As Judge Arguello held: "In reviewing a motion to dismiss in the context of qualified immunity, a district court should not dismiss a complaint for failure to state a claim

3

## II.  STATEMENT OF FACTUAL ALLEGATIONS

When Borkovec arrived at the Boulder County Jail ("BCJ") on October 7, 2022, he told medical staff that he had recently used IV drugs, that he had several chronic health conditions, that he had been held in the Broomfield Detention Center for a week prior to his arrival, and that he had recently been seen at Good Samaritan Hospital. Doc. #1 ("Complaint"), ¶¶ 107, 111-113. BCJ medical staff recorded all these details in his medical record, but did not take any steps to obtain care summaries or other continuity of care records from either Broomfield or Good Samaritan, which would have shown that he had progressing staph bacteremia that should be treated with antibiotics. *Id.*, ¶ 114; *see also id.*, ¶¶ 48, 54, 146, 153.

Over the next three weeks Borkovec regularly reported to BCJ medical staff that he was coughing up blood and repeatedly complained of the classic symptoms of endocarditis and sepsis, but none of the medical workers performed a hands-on assessment or referred him for higher level care. Complaint, ¶¶ 8, 60, 128-129, 151-152, 155. One nurse after another minimized and disregarded his frequent written and verbal reports of emergent symptoms and dire physical presentation without any assessment or referral to a provider capable of diagnosing the cause of his serious symptoms. *Id.*, ¶¶ 8, 117, 118, 121, 133-134, 137, 145, 149-150, 152, 160-170, 240-241. Nobody even took his vital signs. *Id.*, ¶¶ 8, 10, 168.

NP Samuels, whose licensure permits her to form medical diagnoses, finally saw Borkovec in response a written request for medical attention ("kite") describing that he was "still sick" and

---

unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Partridge,* 2019 U.S. Dist. LEXIS 34931, at *21. "On a motion to dismiss, the court determines whether the complaint's factual allegations state a plausible constitutional claim, not whether the complaint contains all the necessary factual allegations to sustain a conclusion that Defendants violated clearly established law." *Id.*, at *22 n.6.

had a persistent cough that was keeping him up at night on October 27, 2022. Complaint, ¶¶ 173-174; *see also* Motion, p. 3. Samuels knew at the time she evaluated Borkovec, that as a recent IV drug user he was at very high risk of developing endocarditis. *Id.*, ¶¶ 46-48, 55-63, 126-129, 155, 180-181, 281. She knew that he had been complaining of severe back pain and tightness, severe diffuse body pain and soreness, ongoing inability to sleep, persistent vomiting, extreme tooth pain, migraines, anxiety, significant weight loss, and fatigue for weeks. *Id.*, ¶¶ 103, 151, 169-170, 180. Borkovec was so obviously gravely ill around the time Samuels' evaluation that other inmates described him as looking "half dead," and were routinely advocating for him to be hospitalized. He was being housed indefinitely in the "Medium-B Module" because he was too sick and weak to work. He was noticeably skinny, lethargic, pale, and jaundiced. He knew and conveyed there was fluid in his lungs, regularly informed medical staff that he was coughing up and vomiting blood, and repeatedly asked to go to the hospital. ¶¶ 157-158, 160-61, 164-165, 171-72, 181.

When Samuels took Borkovec's vital signs, she obtained an abnormally low oxygen saturation and an extremely elevated pulse rate. Complaint, ¶¶ 174-175. As a trained medical professional, Samuels knew that a significantly high pulse, particularly when combined with low blood oxygen saturation, is a danger sign of a lung infection and that high pulses are indicative of sepsis and septic shock. *Id.*, ¶ 176. She also knew that as a recent IV drug user, Borkovec was at high risk of infections; that he was exhibiting classic symptoms of endocarditis, bacteremia, and sepsis; that without antibiotics or treatment he was likely to die; and that his illness exceeded the BCJ's capability to treat. *Id.*, ¶¶ 46, 48, 55-57, 59-63, 127-129, 155, 176, 180-182, 203. She nonetheless did not send him to the hospital, order any diagnostic tests or follow up care to determine what was causing these abnormal vital signs, or even collect a complete set of vitals.

5

*Id.*, ¶ 179. Although Borkovec was complaining of respiratory issues and not maintaining normal blood oxygen saturations, and despite knowing full well that tachycardia (fast heart rate) and tachypnea (abnormally rapid breathing) are sensitive and specific signs in predicting serious bacterial infections, she did not obtain a respiratory rate. *Id.*, ¶ 177. There is no indication she even listened to his heart. Rather, her only response was for him to receive over-the-counter medications she knew could never treat, let alone cure, any underlying condition – completely disregarding an obvious, excessive risk to Borkovec's health. *Id.*, ¶¶ 179, 182.

Borkovec continued to deteriorate in the days immediately following NP Samuels' assessment. He was lethargic, weak, and hardly leaving bed. He was in obvious pain, moving slowly, losing weight, feverish, sweaty, coughing, frail, and struggling even to talk because it hurt so much to breathe. He was pale and spitting thick, chunky blood into milk cartons he kept next to his bed. He made audible gurgling sounds when he breathed, and his wheezing and slow breathing was obvious to other lay inmates. His lungs were clearly full of fluid. He developed dark black circles under his eyes, and complained that he was short of breath. ¶¶ 183-191,197-198. Borkovec still was not sent out, and he suffered an entirely preventable and painful death on the floor of the Jail just one week after NP Samuels saw and refused to treat him. ¶¶ 1-2, 48, 247.

### III.   ARGUMENT

"A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The deliberate indifference standard applies to pretrial detainees, such as Borkovec, through the Fourteenth Amendment. *Paugh v. Uintah Cnty.*, 47 F.4th 1139, 1153-54 (10th Cir. 2022). Deliberate indifference contains both an objective and subjective component. *Id.* at 1154.

6

To satisfy the objective prong, a plaintiff must allege facts demonstrating their medical need was "sufficiently serious." *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The subjective component is satisfied by allegations that the official "knows of and disregards an excessive risk to [a detainee's] health or safety." *Olsen v. Layton Hills Mall,* 312 F.3d 1304, 1315-16 (10th Cir. 2002). This component can be satisfied under two theories: failure to properly treat a serious medical condition ("failure to properly treat theory") or as a gatekeeper who denies access to someone capable of evaluating and treating the patient ("gatekeeper theory"). *Sealock*, 218 F.3d at 1211. "Doing nothing in the face of serious medical needs is obviously sufficient to state a claim under both theories. However, merely doing *something* (with no reference to the underlying condition) does not necessarily insulate one from liability. Instead, a court may need to determine whether there was the functional equivalent of a complete denial of care in light of the specific circumstances." *Lucas*, 58 F.4th at 1139 (internal cites omitted). Providing some care "does not insulate a medical professional from liability when the professional delays referral to a specialist." *Id.* at 1138 (*citing Oxendine v. Kaplan*, 241 F.3d 1272, 1279 (10th Cir. 2001)). Even a brief delay in can be unconstitutional. *Mata v. Saiz*, 427 F.3d 745, 755 (10th Cir. 2005); *Sealock,* 218 F.3d at 1210 (delay of "several" hours in taking inmate with chest pains to a hospital amounted to refusal to fulfill the gatekeeper role).

A plaintiff "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act *despite his knowledge of* a *substantial risk* of serious harm." *Mata*, 427 F.3d at 752 (emphasis in original). Whether a defendant "had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Paugh*, 47

F.4th at 1156. A plaintiff may adequately allege that a medical official knew the detainee faced a substantial risk of harm from the fact that the risk was obvious. If a risk is so obvious that a reasonable person would realize it, a court may infer that the defendant did, in fact, realize it. *Est. of Beauford v. Mesa Cnty., Colorado*, 35 F.4th 1248, 1263 (10th Cir. 2022). Additionally, a medical professional's "heightened knowledge and training can be highly relevant and may tend to show awareness of and disregard of a substantial risk." *Lucas*, 58 F.4th at 1139.

Finally, a defendant does not need to be aware of the *particular* illness to constitute knowledge that a substantial risk of harm exists. Being aware of the symptoms is sufficient. *Est. of Angelo v. Bd. of Cty. Comm'rs*, No. 1:23-cv-01607-CNS-STV, 2024 U.S. Dist. LEXIS 90391, at *20 (D. Colo. May 20, 2024) (citing *Lucas* at 1141). An official who "merely refuse[s] to verify underlying facts that he strongly suspect[s] to be true, or decline[s] to confirm inferences of risk that he strongly suspect[s] to exist" has a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 843 n.8; *Paugh*, 47 F.4th at 1159 (*citing Burke v. Regalado*, 935 F.3d 960, 993 (10th Cir. 2019) ("We have found deliberate indifference when jail officials confronted with serious symptoms took no action to treat them."). A defendant disregards risk when he fails to take reasonable measures to abate it. *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1029 (10th Cir. 2020).

### A. Plaintiff has Plausibly Alleged That Defendant Samuels Was Deliberately Indifferent Under Both the Failure to Properly Treat and Gatekeeper Theories.[2]

As the only provider capable of forming a diagnosis who ever saw Borkovec at the BCJ, NP

---

[2] Defendant Samuels concedes for purposes of her Motion that Borkovec's bacteremia and endocarditis were sufficiently serious medical conditions to meet the objective component. Motion, p. 7. And "Death, [is], without doubt, sufficiently serious to meet the objective component." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009); *Paugh*, 47 F.4th at 1155-56 (collecting cases); *Mata*, 427 F.3d at 753.

Samuels was uniquely positioned to get him the care and treatment he so obviously required, but refused to do so. As articulated by the Tenth Circuit in *Lucas*:

> In some circumstances there may be a clear difference between a "provider" and a "gatekeeper." *Mata*, 427 F.3d at 757. But as was the case here with [NP Samuels], a physician's role often involves treating the patient while simultaneously considering the need for referral to someone with more specialized training at the same time.

58 F.4th 1127, 1143 (10th Cir. 2023).

Here, NP Samuels knew just from her own incomplete exam that Borkovec had been sick for weeks, that he was not maintaining normal blood oxygen saturations, and that his heart rate was extremely elevated at 137 bpm. Even having already obtained two abnormal vital signs, she did not collect a complete set of vitals – choosing not to measure his respiratory rate despite knowing that abnormally rapid breathing is another danger sign of serious bacterial infection. She knew, at the time she decided not to order any diagnostic tests to determine what was causing these abnormal vital signs, that a significantly high pulse, particularly when combined with low blood oxygen saturation, are signs of a dangerous infection, including sepsis. ¶¶ 173-180; 203.

Moreover, like all the lay people around her, Samuels could see that Borkovec was skinny, lethargic, pale, jaundiced, and was so obviously gravely ill that he looked "half dead." Plaintiff is entitled to the reasonable inference that she also saw that he was in obvious pain, moving slowly, feverish, sweaty, frail, struggling to talk, and not breathing normally, as these symptoms were widely observed and obvious to laypeople in the days immediately following her assessment. It is also reasonable to infer Borkovec told her that there was fluid in his lungs, that he was spitting up blood, and asked to go to the hospital as he was routinely sharing this information and repeatedly

9

asking to go to the hospital. ¶¶ 161-165, 171-172, 183, 189.³ In short, knowing that her 22-year-old patient's needs exceeded the jail's resources and that he needed to be sent out to evaluate his life-threatening symptoms, Samuels simply authorized five days' worth of over-the-counter cold medicine. ¶¶ 61, 182. Thus, despite being "presented with recognizable symptoms which potentially create a medical emergency," she recklessly declined to confirm inferences of risk, and despite being on notice of the severity of Borkovec's symptoms, she "made no effort to order that [Borkovec] be transported to a hospital." *Paugh*, 47 4th at 1159; *Prince v. Sheriff of Carter Cty.*, 28 F.4th 1033, 1046 (10th Cir. 2022); *Smith v. Allbaugh*, 987 F.3d 905, 911 (10th Cir. 2021).⁴

Samuels purports to accept all the Complaint's alleged facts as true, and relies on *Self v. Crum*, 439 F.3d 1227 (10th Cir. 2006), to argue that she simply exercised medical judgment, and provided a level of care consistent with Borkovec's symptoms. Motion, pp. 2-3, n.1, 8-10. In so arguing, however, she fails to contend with the vast majority of the facts alleged – acknowledging

---

³ Plaintiff also plausibly alleged that Samuels knew from Borkovec's medical chart that he was an IV drug user, who had complained of severe pain throughout his body, inability to sleep, vomiting, extreme tooth pain, migraines, significant weight loss, and fatigue for weeks. ¶¶ 46, 48, 55-60, 127-129, 180. Plaintiff is entitled to the reasonable inference that she reviewed his medical record when deciding what treatment to provide. On the other hand, if Samuels determined to give nothing more than cold medication after seeing Borkovec in acute medical distress, without even reviewing the record, *that* decision was also deliberately indifferent to a substantial risk of serious harm.

⁴ Samuels' complete disregard of Borkovec's elevated heart rate of 137 bpm standing alone is sufficient to satisfy the deliberate indifference test, as she recklessly disregarded the risk that the dangerously high pulse was caused by a life-threatening condition, took no steps to determine what was causing his very high heart rate, and did nothing to try to lower it despite knowing he could suffer serious injury or death without intervention. *See, e.g.*, *Mata*, 427 F.3d at 752 ("An official would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist."); *Kellum v. Mares*, 657 F. App'x 763, 770 (10th Cir. 2016) (allegations sufficient when a plaintiff alleges "the specific medical symptoms and vital signs" presented to the medical provider, indicating "a need for further assessment, testing, diagnosis and emergency medical treatment. It is from these factual allegations that a plausible inference of deliberate indifference can be drawn.").

only that Borkovec "complained to NP Samuels of feeling sick," and that "according to Plaintiff's Complaint, NP Samuels was aware of an abnormal vital sign[5] at the time of her assessment."). *Id.*, p. 9. But Samuels' refusal to accept all the facts alleged, and complete avoidance of them, does not make the level of care she provided consistent with the symptoms alleged.[6] Borkovec's symptoms, including extremely abnormal vital signs, and easily observable indicia of serious illness such as severe pain, pale, jaundiced skin, significant weight loss, and difficulty breathing, were so obviously alarming that a reasonable person would recognize them as serious symptoms indicating a need for emergency care rather than cough syrup, particularly given that all of the other over-the-counter medications he was already receiving had failed to treat his mounting serious symptoms. "These circumstances are more like prescribing Tylenol for a gangrenous hand, than to a disagreement over a course of treatment." *Est. of Taylor v. Denver Health & Hosp. Auth.*, No. 1:23-cv-02355-CNS-KAS, 2024 U.S. Dist. LEXIS 149013, at *32-33 (D. Colo. Aug. 20, 2024) (*citing Oxendine*, 241 F.3d at 1277). While the Tenth Circuit held in *Self* that "where a doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted under our case law," it was careful to point out (on summary judgment) that a jury may infer conscious disregard "[i]f a

---

[5] Defendant impermissibly asks the Court to accept her version of the facts, arguing that his oxygen saturation of 93% was a normal vital sign. Motion, p. 9, n.2; *compare* Complaint, ¶¶ 175-178, 180.
[6] Courts consistently hold that whether a defendant actually believed what they claim is for the trier of fact, who is not required to credit their claims. *See Estate of Stieb v. Johnson*, No. 16-cv-02548-KLM, 2018 U.S. Dist. LEXIS 147186, *37 (D. Colo. Aug. 29, 2018) (denying summary judgment where under plaintiffs theory, defendants were "deliberately indifferent" and under defendants, they were "at most, negligent."); *Vaughn v. Gray*, 557 F.3d 904, 909 (8th Cir. 2009) (failure to respond to prisoner who vomited all night could support finding of deliberate indifference despite claim that they thought the prisoner was vomiting because he had ingested shampoo; "Appellants' self-serving contention that they did not have the requisite knowledge does not provide an automatic bar to liability in light of the objective evidence to the contrary.").

11

prison doctor, for example, responds to an obvious risk with treatment that is patently unreasonable." 439 F.3d at 1232. And the Tenth Circuit has made abundantly clear in subsequent cases that providing nothing more than over-the-counter medications in response to obviously serious symptoms, like those Mr. Borkovec was experiencing, is "patently unreasonable" treatment. *See, e.g. Lucas*, 58 F.4th at 1141 (finding doctor's provision of "mild over-the-counter pain relievers" in response to serious symptoms did not reflect a mere exercise of medical judgment, and holding, "neither the presence of some initial care prior to the evinced deliberate indifference, nor the provision of some modicum of care defeats a claim for deliberate indifference under a failure to properly treat theory."); *Allbaugh*, 987 F.3d at 911 (medical staff did not "merely misdiagnose[]" when the plaintiff "presented with severe symptoms" of abdominal pain, and "medical staff prescribed woefully inadequate treatment" in the form of over-the-counter medications and a special diet); *Estate of Jensen v. Clyde*, 989 F.3d 848, 860 (10th Cir. 2021) (trier of fact could conclude jail nurse who provided Gatorade instead of referring a patient for serious stomach problems "did not just misdiagnose" the decedent, but rather, "'completely refused to fulfill her duty as gatekeeper.'") (*quoting Mata*, 427 F.3d at 758)); *Kellum*, 657 F. App'x at 770 (deliberate indifference alleged where medical staff treated patient with fever, weakness, trouble breathing, nausea, chills, and poor skin color with Tylenol and Ibuprofen, advised her to drink more water, and did not take any x-rays, EKGs, or lab tests for a week); *Oxendine*, 241 F.3d at 1277 & n.7 (doctor who ordered daily infirmary visits and was aware of gangrenous hand tissue for two weeks, yet only prescribed Tylenol with codeine, was deliberately indifferent; because the patient's medical issue obviously required "additional medical care and referral," delaying addressing that need was not mere malpractice but rather a conscious disregard of a substantial

12

risk); *see also Est. of Taylor*, 2024 U.S. Dist. LEXIS 149013, at *39-41 (deliberate indifference plausible under both theories where plaintiffs alleged doctor did not hospitalize patient with serious symptoms, or provide any treatment or evaluation beyond anti-nausea medications).

So too here, the facts do not reflect a mere misdiagnosis of a minor ailment. The 2021 *Smith v. Allbaugh* case is particularly analogous.[7] There, a 21-year-old submitted five requests for medical attention over several days, detailing serious symptoms including severe pain, bloody vomit and stool, and difficulty breathing; and medical staff charted he had significant weight loss and an elevated heartrate. In response, Defendants performed an incomplete abdominal exam and prescribed over the counter medications. As here, the Defendants in *Allbaugh* argued that they were not deliberately indifferent because they merely misdiagnosed him. 987 F.3d at 908-09. Rejecting that argument, the Tenth Circuit held that the Plaintiff plausibly alleged that "medical staff demonstrated deliberate indifference when they failed to perform a complete abdominal exam despite [the decedent's] complaints of severe stomach pain," explaining:

> Ms. Smith's allegations do not amount to a differing opinion as to the course of treatment, but a claim that JHCC medical staff "responded to an obvious risk with treatment that is patently unreasonable." *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006). Indeed, Ms. Smith alleges that Mr. England presented with severe symptoms, but that the medical staff prescribed woefully inadequate treatment in the form of Pepto-Bismol, a laxative, Ibuprofen, and fibrous foods.

*Id.* at 912. Here, as in *Allbaugh*, Borkovec submitted many kites over several weeks detailing serious, mounting symptoms, and NP Samuels recorded concerning abnormal vital signs in his medical record. She, like the defendants in *Allbaugh*, did not perform a complete exam, or even collect a complete set of vital signs. And, as in *Allbaugh*, Samuels responded with woefully

---

[7] The *Kellum* case is also especially instructive as the Plaintiff exhibited remarkably similar symptoms prior to being hospitalized for endocarditis. 657 F. App'x 763 (10th Cir. 2016).

13

inadequate treatment in the form of a decongestant, Tylenol, and cough syrup in the face of severe symptoms. As Judge Neureiter recently articulated:

> If it were the standard that the provision of *some* medical care, no matter how inadequate, is enough to escape a deliberate indifference claim, then no civil rights complaint where a medical professional provided any response to a sick person would ever survive a motion to dismiss. This is not the law. For example, if an inmate were stabbed in the throat and had blood gushing from his jugular vein, merely providing a band-aid and telling the inmate to lie down and wait for the bleeding to stop would nevertheless constitute deliberate indifference because the presenting "medical symptoms and vital signs" would indicate a need for "emergency medical treatment." *Kellum*, 657 F. App'x at 770.

*Tanner v. Campbell*, No. 21-cv-02340-CMA-NRN, 2022 U.S. Dist. LEXIS 20753, at *30 (D. Colo. Feb. 4, 2022).

The Complaint is replete with plausible allegations that Samuels knew of Borkovec's obviously serious symptoms and need for emergent care beyond the jail's capabilities, but nonetheless chose not to send him to the hospital or order any diagnostic tests. Her decision to "treat" his severe, systemic, and progressing illness with Tylenol and cough syrup was "hardly reasonable … given the dire circumstances." *Estate of Jensen*, 989 F.3d at 859. Plaintiff has robustly alleged facts demonstrating that Defendant Samuels abdicated her duties as both a provider and a gatekeeper, and her Motion should be denied.

### B. Defendant NP Samuels is not Entitled to Qualified Immunity.

"'There is little doubt that deliberate indifference to an inmate's serious medical need is a clearly established constitutional right.' And more specifically, we have said that it is 'clearly established that when a detainee has obvious and serious medical needs, ignoring those needs necessarily violates the detainee's constitutional rights.'" *Paugh*, 47 F.4th at 1167 *quoting Mata*, 427 F.3d at 749; *Quintana*, 973 F.3d at 1033). It has also "been clearly established in this circuit

since at least 2006 that a deliberate indifference claim will arise when a medical professional completely denies care although presented with recognizable symptoms which potentially create a medical emergency . . . knowing that medical protocol requires referral or minimal diagnostic testing to confirm the symptoms, sends the inmate back to his cell." *Al-Turki v. Robinson*, 762 F.3d 1188, 1194 (10th Cir. 2014); *see also Kellum*, 657 F. App'x at 767-68; *Owens v. United States*, No. 1:20-cv-01094-RBJ-NRN, 2021 U.S. Dist. LEXIS 143584, at *10 (D. Colo. Aug. 2, 2021) (clearly established that disregarding an obvious serious medical condition is unconstitutional). Denying and delaying emergency care for Borkovec's ongoing worsening condition in the face of vital signs and symptoms "indicating a need for urgent medical attention," and leaving him to languish and suffer for another week until he died, was unquestionably unconstitutional. *Kellum*, 657 F. App'x at 764; *Mata*, 427 F.3d at 751.[8]

WHEREFORE, Plaintiff respectfully requests that the Court deny Defendant's Motion.

Respectfully submitted this 28th day of January, 2025.

> */s/ Rachel Kennedy*
> Rachel Kennedy
> Erica Grossman
> HOLLAND, HOLLAND EDWARDS & GROSSMAN, LLC
> 1437 High Street
> Denver, CO  80218
> rachel@hheglaw.com
> *Attorneys for Plaintiffs*

---

[8] Further, Defendant's three sentence qualified immunity argument "is not sufficient to adequately raise the qualified immunity defense." *Jones v. Hansen*, No. 20-cv-3548-PAB-SKC, 2022 U.S. Dist. LEXIS 174078, at *31 (D. Colo. Sep. 26, 2022). In the *Jones* case, this Court concluded that a group of defendants who cited "the elements of qualified immunity and then argue[d], in two sentences, that they [were] entitled to the doctrine's protection," did not adequately raise the defense and were not entitled to its protection. *Id.* at *30-32 (collecting cases). The same conclusion is warranted here, where Defendant's analysis of qualified immunity is "cursory at best." *Tillmon v. Douglas County*, 817 F. App'x 586, 589 (10th Cir. 2020) (unpublished).

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of January, 2025, the foregoing was filed using the CM/ECF system. I hereby certify I will send electronic notification of said filing to the following recipients.

Katherine M.L. Pratt
Christy N. Redmond
WELLS, ANDERSON & RACE, LLC
kpratt@warllc.com
credmond@warllc.com
*Attorneys for City and County of Broomfield*

D. Scott Rendleman
Anthony B. Vanicek
QUINTAIROS, PRIETO, WOOD & BOYER, PA
scott.rendleman@qpwblaw.com
Anthony.vanicek@gpwblaw.com
*Attorney for Maxim Related Defendants*

Josh A. Marks
Geoffrey C. Klingsporn
BERG HILL GREENLEAF RUSCITTI LLP
jam@bhgrlaw.com
Geoff.klingsporn@bhgrlaw.com
*Attorneys for Boulder Defendants*

Stephanie L. Clark
SHARUZI LAW GROUP, LTD.
sclark@sharuzilaw.com
*Attorney for Defendant Samuels*

B Chance Holland
R. Tate Roush
HALL BOOTH SMITH, P.C.
cholland@hallboothsmith.com
troush@hallboothsmith.com
*Attorneys for Turn Key Related Defendants*
Nancy C. Rodgers

Christina Pena Corchado
BROOMFIELD CITY AND COUNTY OFFICE
nrodgers@broomfield.org
cpcorchado@broomfield.org
*Attorneys for Broomfield Defendants*

Sierra Ward
Erica L. Gajda
CHILDS MCCUNE LLC
sward@childsmccune.com
egajda@childsmccune.com
*Attorneys for Defendant Davis*

Rachel E. Ryckman
WHITE AND STEELE, P.C.
rryckman@wsteele.com
*Attorney for Defendant Parker*

*/s/ Brooke Thiele-LaForest*
Brooke Thiele-LaForest, Paralegal